# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

FILED
CHARLOTTE, NC
NOV 2 0 2008
U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

Darryl L Culp
Bettie Oates Culp
799 Pinkney Place
Stanley, NC 28164
      Plaintiffs

**COMPLAINT**

vs.

HSBC Consumer Lending USA Inc.
MBNA America (Delaware), N.A.
P.O. Box 88000
Baltimore, MD 21288-0001
      Defendants

---

Now come Plaintiffs, Darryl Culp & Bettie Culp (acting Pro Se Plaintiff) making claim against the Defendant HSBC Consumer Lending USA Inc. as servicing agent for MBNA America (Delaware), N.A), Exhibit H, page 1, for: Failing to provide Plaintiffs copies of its certificate Issued by the Secretary of State, Failing to prove ownership of mortgage note including Predatory Lending, Attempting to validate a debt with an Unofficial Document, Violating The Fair Debt Collection Practices Act, and Nondisclosure of right to court protection in unemployment or underemployment cases.

## BACKGROUND

On June 9, 2008 at 10:00am, an order permitting foreclosure was granted to Substitute Trustee who was appointed by MBNA America (Delaware), N.A.. HSBC Consumer Lending USA, Inc., (Household Finance Corporation) is the servicer for MNBA America (Delaware), N.A. mortgage loan (Exhibit L, Page 3).

The Clerk of Superior Court made its findings on the basis of the record and the evidence presented at the hearing by the Defendant (Exhibit L, page 1): Service,

Ownership of Note, Validity of debt, Default, and Right of Foreclosure under Power of Sale.

This decision for foreclosure granted to Defendant should be reversed because: The Defendant never proved ownership of mortgage note, Defendant attempted to validate a debt with an Unofficial Document, and Defendant never validated the debt thus not proving default.

Plaintiff is requesting property to be returned to them and Deed of Trust signed over to Plaintiff.

## COUNT ONE

The Defendant (MBNA America (Delaware), N.A) entered into contract in the State of North Carolina with Plaintiffs without providing Plaintiffs with copies of Defendant's certificate Issued by the Secretary of State granting permission to conduct business in the State as a Foreign Corporation. This is in violation of GS 55B-16 of North Carolina Business Corporation Act and Civil Rule 9 (B) of the Rules of Federal Procedure against Fraud.

## COUNT TWO

Defendant (MBNA America (Delaware), N.A) failed to provide the requested paperwork to prove that they (MBNA America (Delaware), N.A) own the plaintiff's mortgage note. The Defendant attempted to validate a debt with an Unofficial Document (Exhibit M). Plaintiffs sent (Exhibits A-G) through Registered Mail #RE 194 288 042 US on April 3, 2008, to the Defendant requesting the Defendant validate the debt.

1. EXHIBIT A. NOTICE OF SUPERIOR ENTITLEMENT RIGHT BY ENTITLEMENT HOLDER, OR CONTROLLING CREDITOR, OR DRAWER, OR MAKER, Darryl L. Culp.

2. EXHIBIT B. PRIVACY ACT.

3. EXHIBIT C. ENTITLEMENT HOLDER'S PROVATE INTERNATIONAL ADMINISTRATIVE REMEDY DEMAND NO. NRDC 08 AND NOTICE OF RESERVATION OF RIGHT OF INITIATING ADVERSE CLAIM OR COUNTERCLAIM and CLAIM OFFICIAL OATHE, OR BOND, OR SURETY.

4.  EXHIBIT D. VERIFICATION OF NOTICE OF RESERVATION OF RIGHT OF INITIATING ADVERSE CLAIM, OR COUNTERCLAIM, OR CLAIM OATH, OR BOND, OR SURETY.

5.  EXHIBIT E. ENTITLEMENT HOLDERS CONDITIONAL ACCEPTANCE and COUNTRYWIDE HOME LOANS'S OFFER OF PERFORMANCE.

6.  EXHIBIT F. ALLEGED CREDITOR'S GOOD FAITH DISCLOSURE STATEMENT.

7.  EXHIBIT G. PROFF OF SERVICE.

## COUNT THREE

On April 24, 2008, Defendant responded to the request to validate the debt stating that the debt was validated on March 3, 2008 (Exhibit K). The Defendant claims to have established the debt through my alleged signature on an Unofficial Document (Exhibit M, page 5) provided by the Defendant. However, the Defendant still failed to provide the Plaintiff with the Original Documents that were submitted for re-recording and/or cancellation (Exhibit M, page 6) to prove that they (HSBC or MBNA America (Delaware), N.A) own the mortgage note. Plaintiffs are requesting proof of the Original filed Documents. To the best of our knowledge, the Plaintiffs (Darryl & Bettie) have no such knowledge of the existence of the validated debt and furthermore requests that the ownership of mortgage note be provided to the courts immediately or sign the Deed of Trust over to the Plaintiffs.

## COUNT FOUR

The Defendant furthermore states, "If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose on your property, even if we have already initiated a foreclosure proceeding....", (Exhibit H, page 2, #6, dated April 25, 2008). The Defendant's response in (Exhibit K, paragraph 1) validates the fact that the Plaintiff did

in fact dispute and request proof of debt in Defendant's statement, " We are in receipt of your Dispute of Alleged Debt; Challenging of Entitlement Rights, dated April 3, 2008 (Exhibit K, paragraph 1). The Defendant did not define where on the calendar the thirty (30) days should lie. Based on the information given by the Defendant, the Plaintiff construed thirty (30) days to include time before and after. According to the Defendant's admission (Exhibit H, page 2, #6), foreclosure proceedings should have been suspended or not taken place at all.

## COUNT FIVE

The Defendant, (MBNA America (Delaware), N.A., HSBC Consumer Lending USA, Inc., trustee or broker/dealer) is required by law to state the right to the Plaintiff of court protection in unemployment or underemployment cases. Plaintiffs' (Darryl Culp & Bettie Culp) right to court protection was never stated in any communication from the Defendant.

Darryl L. Culp was declared permanently disabled (100%) over a year ago (Exhibit J) and therefore is unemployed.

## CLAIM

The Plaintiffs set for the following claim by which Relief may be granted. Wherefore, Plaintiffs pray the Court that:

1. A Judgment in favor of the Plaintiffs against Defendant (HSBC, MBNA America (Delaware), N.A., that states the contract is null and void, because of the Fraud committed in violation of the State Usury Law Cited at GS Chapter 24-1.

2. As a direct and proximate result of Defendant's Fraud, Plaintiffs have been damaged in an amount in excess of $10,000, and additionally, Plaintiffs are entitled to recover punitive damages in an amount in excess of $10,000.00 as a result of Defendant's Fraud.

3. Plaintiffs recover Judgment against Defendants in an amount in excess of $10,000.00 as punitive damages.

4. Plaintiffs recover the costs and expenses incurred in this action.

5. Because the Defendant engaged in deceptive trade practices by entering into A contract with Plaintiffs, as a foreign corporation in the State, and failed to provide Documentation to them that was issued by the North Carolina Secretary of State, a Certified copy of its Charter or Certificates granting them the privilege to operate as a foreign commercial business, the Deed of Trust should be signed over to the Plaintiffs.

6. Plaintiff is requesting that the Deed of Trust to the property be deeded to the Plaintiffs.

7. Furthermore, the Plaintiffs pray that the Court will grant them and all other forms of relief that it deems fair, equitable and just.

Done on this 19th day of November, 2008, A.D.

_Darryl L Culp_ 11-19-08     _Bettie O. Culp_ 11/19/08

Darryl L. Culp,     Date          Bettie O Culp, Date

APPENDIX

Bettie D Oates
c/o 799 Pinkney Pl
Stanley, NC   [28164]

# Non-negotiable
## Request for sworn statement of Novation;
## Dispute of Alleged Debt;
## Challenge of Entitlement Rights;

Dated: April 3, 2008

This written communication hereinafter "**Notice**" Contains this cover page, proof of service, plus six parts.

Part 1.       TWO PAGE NOTICE OF SUPERIOR ENTITLEMENT RIGHT BY ENTITLEMENT HOLDER, OR CONTROLLING CREDITOR, OR DRAWER, OR MAKER, Bettie D Oates.

Part 2.       THREE PAGE PRIVACY ACT REQUEST. ( seventeen individual Privacy Act requests)

Part 3.       TWO PAGE ENTITLEMENT HOLDER'S PRIVATE INTERNATIONAL ADMINISTRATIVE REMEDY DEMAND NO.NRDC 08 AND NOTICE OF RESERVATION OF RIGHT OF INITIATING ADVERSE CLAIM OR COUNTERCLAIM and CLAIM OFFICIAL OATH, OR BOND, OR SURETY.

Part 4.       ONE PAGE VERIFICATION OF NOTICE OF RESERVATION OF RIGHT OF INITIATING ADVERSE CLAIM, OR COUNTERCLAIM, OR CLAIM OATH, OR BOND, OR SURETY.

Part 5.       TWO PAGE ENTITLEMENT HOLDERS CONDITIONAL ACCEPTANCE, and HSBC CONSUMER LENDING USA INC.'S OFFER OF PERFORMANCE.

Part 6.       FIVE PAGE ALLEGED CREDITOR'S GOOD FAITH DISCLOSURE STATEMENT.

For:   HSBC CONSUMER LENDING USA INC., trustee or broker/dealer:
       P.O. Box 88000
       Baltimore, MD 21288-0001

Including all and sundry unto whom these presents do or may concern.

Re:     Alleged claim by HSBC CONSUMER LENDING USA INC. dated March 28,2008, a
        copy of which is attached herewith, made fully part hereof, and incorporated herein by
        reference.

Part 1.    **THREE PAGE NOTICE OF SUPERIOR ENTITLEMENT RIGHT BY ENTITLEMENT HOLDER, OR CONTROLLING CREDITOR, OR DRAWER, OR MAKER, Bettie D Oates**

Bettie D Oates or BETTIE D OATES, hereinafter Entitlement Holder or Controlling Creditor or Drawer or Maker, declares under the penalty of perjury under the Laws of The united States of America and of North Carolina Republic, being of lawful age, a competent and willing as witness that the facts contained herein are true, complete, correct, not misleading, and are the facts as far as such have been brought into my knowledge:

1.   Bettie D Oates is in receipt of HSBC CONSUMER LENDING USA INC.'s adverse claim dated March 28, 2008 a copy of which is enclosed.

2    This **Notice** is a request by Bettie D Oates for certified confirmation by HSBC CONSUMER LENDING USA INC., for any of HSBC CONSUMER LENDING USA INC.'s existing agreement(s) granting HSBC CONSUMER LENDING USA INC. attachment or perfection in any Entitlement, or transfer, or control right(s), if any, regarding alleged account # 605370-00-102727.

3.   Bettie D Oates is not in possession of, nor has first hand knowledge of, any certified interest HSBC CONSUMER LENDING USA INC. has over Bettie D Oates or alleged account # 605370-00-102727.

4    Bettie D Oates is not in possession of, nor has first hand knowledge of, any instrument controlling or entitling or transferring right(s) HSBC CONSUMER LENDING USA INC. has over any asset that created or funded alleged account # 605370-00-102727.

5.   Bettie D Oates is not in possession of, nor has first hand knowledge of, HSBC CONSUMER LENDING USA INC.'s instruments or documents granting certified or uncertified entitlement or transfer or control right(s) over alleged account # 605370-00-102727.

6    Bettie D Oates is not in possession of, nor has first hand knowledge of, HSBC CONSUMER LENDING USA INC.'s ledger entries of asset(s) that are in conformity with General Accepted Accounting Principles regarding the funding of alleged account # 605370-00-102727.

7    Absent a certified rebuttal of any points herein this six Part **"Notice"** by HSBC CONSUMER LENDING USA INC. or any agents or assigns, HSBC CONSUMER LENDING USA INC. accepts all possible liability for the below acts and deeds, not limited by, claims and damages unto Bettie D Oates in:

   a.   violations under Title 62 of the Revised Statutes Chapter 4.
   b.   unlawful conversion.
   c.   a set off of alleged account # 605370-00-102727

d. violation of Securities Exchange Act of 1934
e. violation of Securities Act of 1933
f. an adverse claim found at UCC 8-105(b)
g. violation of 31 CFR 103.35 FINANCIAL RECORDKEEPING AND REPORTING
h. violation of 17 CFR 240.15c1-2 Fraud and misrepresentation
i. violation of 18 USC 1956 Laundering of monetary instruments
j. violation of 18 USC 1957 Engaging in monetary transactions in property derived from specified unlawful activity
k. violation of 31 USC 5324 Structuring transactions to evade reporting requirements
l. violation of Truth and Lending Act Section 1640(h)
m. violations is Anti-trust laws
n. violation of the Uniform Deceptive Trade Practices Act
o. violations in bank fraud
p. violations in wire fraud
q. violation of the Consumer Credit Cost Disclosure Act
r. violation of False Advertising
s. violation of the Unfair Sales Act
t. violation of the Unfair Competition
u. violation of 12 USCA Sec. 1831n(a)(2)(A) or 12 CFR 741.6(b) (GAAP)
v. violation of 18 USC 513 and 514  Counterfeiting and Forgery
w. violation of Pro-Offering of Bettie D Oates's Investment Securities
x. violation of 12 USC CHAPTER 2 SUBCHAPTER 4 SECTION 83 (a)
y. violation of law by Acts of Privateering by Breech of contract or takings
z. violation of law by Acts of collusion by HSBC CONSUMER LENDING USA INC. of Acts of collusion
aa. violation of paper terrorism
bb. violation of Freedom of Information or Privacy Act at 5 USC 552 and/or 552(a)
cc. misrepresentation of agreement
dd. violation of FDCPA 15 USC 1692e(g)(A) false representation of character amount or legal status of debt (* definition of debt collector with supporting case history)
ee. violation of 15 USC 1692d; conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt; (* definition of debt collector with case history)
ff. violation of state consumer protection laws; breach of good faith and fair dealings, unfair and unlawful conduct and unfair trade practice upon the consumer

* 15 USC 1962a: The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTES 246 B.R. 709; 298 2000 (GMAC is a "debt collector" within

the statutory definition of the Fair Debt Collection Practices Act and a licensed debt collector).

8. HSBC CONSUMER LENDING USA INC.'s or any agents or assigns omissions of or agreement by silence of a certified rebuttal of any points in this six Part **Notice**", agrees and consents to remove any interests (liens) in Bettie D Oates or any property or collateral connected to BETTIE D OATES or alleged account 605370-00-102727 and waives any immunities or defenses in violations agreed to in number seven herein-stated or any other laws. HSBC CONSUMER LENDING USA INC. or any agents or assigns also agrees and consents to a claim of damages of the original dollar amount of alleged account # 605370-00-102727 to Bettie D Oates with the Federal Deposit Insurance Corporation.

9. HSBC CONSUMER LENDING USA INC. or any agents or assigns offering a rebuttal of this six Part **"Notice"** must do so in the manner of this **"Notice"** by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony. Any direct rebuttal with certified true and complete accompanying proof must be posted into the Notary address herein within ten days. When no verified rebuttal of this **"Notice"** is made in a timely manner, a "Certificate of Non-Response" serves as HSBC CONSUMER LENDING USA INC.'s judgment or consent or agreement by means of silence with all allegations of violations herein-stated or any other law.

10. **Power of Attorney:** When HSBC CONSUMER LENDING USA INC. fails by not rebutting to any part of this six Part **"Notice"** HSBC CONSUMER LENDING USA INC. agrees with the granting unto Bettie D Oates's **Power of Attorney** and all authorization in signing or endorsing HSBC CONSUMER LENDING USA INC.'s name upon any checks, drafts, money orders, exchanges or any other form of payment in satisfaction of any obligation of this agreement or any agreement arising from this agreement. HSBC CONSUMER LENDING USA INC. grants authorization unto Bettie D Oates for signing any other instrument necessary for satisfying the obligation for HSBC CONSUMER LENDING USA INC. under this Notice and agreement. Bankruptcy cannot discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by HSBC CONSUMER LENDING USA INC. waives all defenses and remains in effect until satisfaction of all obligations by HSBC CONSUMER LENDING USA INC..



Part 2. **THREE PAGE PRIVACY ACT REQUEST IN ACCORDANCE WITH THE ADMISISTRATIVE PROCEDURES ACT**

**This is a Privacy Act request under 5 U.S.C. § 552a** and appropriate regulations.
This is my firm promise to pay fees and costs for locating, duplicating and reviewing the documents for information requested below.
I am making this request in the classification of "other requester." if costs are expected to exceed $50.00 please send estimated costs.
If some of the seventeen individual requests are exempt from release, please send those portions reasonably segregable and provide me with indexing, itemization, and detailed justification concerning the information you are not releasing.
The information will provide knowledge and understanding of the rules and regulations of the agency, and will assist the requester relative to the policies of the agency.
I understand the penalties provided in 5 U.S.C. § 552(a)(1)(3) for requesting or obtaining access to documents or records under false pretenses.
I am the person making this request and my signature appears below.
**Please underline expedite underline this underline Privacy underline Act underline request.**

At this point in time: Regarding Alleged account # 605370-00-102727 at HSBC CONSUMER LENDING USA INC.:

1     I request copies of ALL existing records or documents or BOTH that show within any file(s) of HSBC CONSUMER LENDING USA INC., ALL **proof of shares** HSBC CONSUMER LENDING USA INC. **used, of its own, to make loan** # 605370-00-102727.

2.     I request copies of any evidence that establishes whether HSBC CONSUMER LENDING USA INC. is effective as the **broker** regarding alleged account or transaction # 605370-00-102727.

3.     I request any evidence that establish that HSBC CONSUMER LENDING USA INC. **as the creditor** regarding alleged account or transaction # 605370-00-102727.

4.     I request any certified or registered name(s) and approved filing number(s) used for the **funding or crediting source** to alleged account or transaction # 605370-00-102727 at HSBC CONSUMER LENDING USA INC..

5.     I request any copy(ies) of a certified copy, front and back side(s), of any such **note or document(s) used to fund alleged account or transaction** # 605370-00-102727 at HSBC CONSUMER LENDING USA INC..

6.     I am requesting copies of all records and documents within the registry of the United States Securities Exchange Commission that show the **certified or registered**

**investment security** that HSBC CONSUMER LENDING USA INC., a national bank, has an interest in alleged account or transaction # 605370-00-102727.

7. I request all evidence that show that HSBC CONSUMER LENDING USA INC. is the **issuer or holder in due course** in alleged account or transaction # 605370-00-102727.

8. I request certified confirmation that HSBC CONSUMER LENDING USA INC. is effecting alleged account or transaction # 605370-00-102727 **as the dealer**.

9. I request certified confirmation of alleged account or transaction # 605370-00-102727 being **a security obligation** of HSBC CONSUMER LENDING USA INC..

10. I request certified confirmation HSBC CONSUMER LENDING USA INC. is effecting alleged account or transaction # 605370-00-102727 **in a fiduciary capacity**.

11. I request copies of any evidence that establishes whether HSBC CONSUMER LENDING USA INC. is effective **as the trustee** regarding alleged account or transaction # 605370-00-102727.

12. I request certified documentation that HSBC CONSUMER LENDING USA INC. facilitated the transfer of funds or securities **as the clearing agency** re alleged account or transaction # 605370-00-102727.

13. I request any certified evidence that HSBC CONSUMER LENDING USA INC. facilitated the transfer of funds or securities **as the custodian** re alleged account or transaction # 605370-00-102727.

14. I request a certified copy of HSBC CONSUMER LENDING USA INC.'s **Fidelity bond and any errors and omissions policy** as required by law.

15. I request a true complete copy of HSBC CONSUMER LENDING USA INC.'s registered and filed **Articles of Incorporation**.

16. I request any documentation evidencing HSBC CONSUMER LENDING USA INC. as a **"insured bank" member**.

17. I am requesting all documents regarding alleged account # 605370-00-102727 that specify the identity of the below list of persons:

    a. Trust
    b. Trustor
    c. Grantor
    d. Trustee
    e. Beneficiary
    f. Administrator
    g. Servicer (including any and all subservicer(s) and master servicers)

h. Issuer
i. Confirmer
j. Drawer
k. Drawee
l. Beneficiary
m. Customer
n. Presenter
o. Nominated person
p. Successor of a beneficiary

When no documentation or evidence exists in **ANY** files or records that HSBC CONSUMER LENDING USA INC. has, regarding this Privacy Act request herein, please send a record stating that **NO SUCH DOCUMENTATION OR INFORMATION EXISTS** within any files or records.

When the HSBC CONSUMER LENDING USA INC. does not maintain any of the Information or Requests please forward a copy of any portions of this Privacy Act request unto the appropriate department that does and notify the requestor of the appropriate department and that the HSBC CONSUMER LENDING USA INC. has forwarded it accordingly.

Via United States Postal Service /Registered Mail #RE 194 288 042 US

Part 3.   **TWO PAGE ENTITLEMENT HOLDER'S PRIVATE INTERNATIONAL ADMINISTRATIVE REMEDY DEMAND NO. CNH1 AND NOTICE OF RESERVATION OF RIGHT OF INITIATING ADVERSE CLAIM OR COUNTERCLAIM and CLAIM OFFICIAL OATH, OR BOND, OR SURETY**

Re:   Alleged Creditor's communication, referencing dated: March 28,2008, a COPY attached hereto.

Alleged Creditor:  HSBC CONSUMER LENDING USA INC.
Alleged Account No.: 605370-00-102727
Alleged Amount Due: $104,298.75

Entitlement Holder is in receipt of Alleged Creditor presentment referenced above; a true and correct copy of which is attached hereto and referenced herein.

Entitlement Holder hereby gives Alleged Creditor **Notice** that Bettie D Oates is not refusing payment, but is making an adverse claim, dispute, and **Notice** that
  a) the above referenced *alleged or purported* debt is not valid
  b) Alleged Creditor's rights in the alleged claim is under dispute, and
  c) that Entitlement Holder does not take issue with the amount of the *alleged or purported* debt claimed but rather lack of HSBC CONSUMER LENDING USA INC.'s alleged rights in the alleged claim.

## NOTICE OF RESERVATION OF RIGHT OF INITIATING ADVERSE CLAIM OR COUNTERCLAIM AND OF CLAIMING OFFICIAL OATH, OR BOND, OR SURETY.

When Alleged Creditor either by commission or omission,
  a) fails by not giving full disclosure unto Entitlement Holder regarding the nature and cause of Alleged Creditor's alleged rights in claim regarding the herein referenced *alleged/purported* rights in the alleged debt,
  b) states a false claim by false representation of the character, or legal status of the herein referenced alleged/purported debt, or
  c) makes any threat of taking any action that cannot legally be taken, in violation of Law Entitlement Holder reserves all right(s) of initiating a counterclaim and for claiming the official Oath or Bond or surety of Alleged Creditor or any Principal(s), Agent(s) or Assigns of Alleged Creditor(s) whose acts(s) or failure(s) by not acting result in any physical, mental, or emotional injury(s) against Entitlement Holder,.

Alleged Creditor is also hereby given **Notice** that:
    a)  Alleged Creditor unsubstantiated demands for payment, a *"scheme or artifice" "caused to be delivered by mail,"* may constitute Mail Fraud under State and Federal Laws.
    b)  Alleged Creditor's failure by not providing the Entitlement Holder with the requisite rights in the Entitlement and validation in the above referenced alleged/purported claim within the requirements of Law. Alleged Creditor tacitly agrees:
        (i)    Alleged Creditor has no lawful, bona fide, verifiable claim over the above referenced alleged account,
        (ii)   Alleged Creditor waives any or all claims against Entitlement Holder.
        (iii)  Alleged Creditor tacitly agrees with compensating Entitlement Holder for all costs, fees and expenses incurred in defending Entitlement Holder against this or any continued collection attempt(s) regarding the above referenced alleged account.
        (iv)  Alleged Creditor agrees and consents to removing all interests (liens) from BETTIE D OATES or any property or collateral regarding alleged account # 605370-00-102727.
        (v)   Agrees, consents, and accepts a claim with no immunities or defenses from BETTIE D OATES with the Federal Insurance Deposit Corporation for the complete original amount of alleged account # 605370-00-102727.

This is an effort toward determining a case or counterclaim against the Alleged Creditor and any of the attached herein questions or disclosures or statements, including any information obtained otherwise either by Alleged Creditor's silence or commission or omission, shall be agreed by Alleged Creditor in granting jurisdiction and the validity of such case or counterclaim against the Alleged Creditor.



Part 4.    **ONE PAGE VERIFICATION OF NOTICE OF RESERVATION OF RIGHT OF INITIATING ADVERSE CLAIM, OR COUNTERCLAIM, OR CLAIM OATH, OR BOND, OR SURETY.**

Entitlement Holder's **Notice** and counterclaim No NRDC 08

Entitlement Holder is competent to testify and over the age of twenty-one years regarding the matters stated herein.

Entitlement Holder has first-hand knowledge of the facts stated herein.

Entitlement Holder has read the foregoing attached **Notice** of Reservation of Right of Initiating Counterclaim, or Claim Oath, or Bond, or Surety.

This **Notice** of Reservation of Right of Initiating a Counterclaim and of Claiming the Oath or Bond or Surety is not being interposed for purpose of delay.

This **Notice** of Reservation of Right to Initiate Counterclaim or to Claim Oath or Bond or Surety will not prejudice the Alleged Creditor in this matter.

Entitlement Holder has not joined into any merits with Alleged Creditor.

Entitlement Holder reserves **ALL** attachment, or perfection, or holder in due course, or transfer, or assignment, or consignment rights of original instrument funding alleged claim or debt.

Entitlement Holder is controlling creditor of original instrument funding alleged debt.

Entitlement Holder is maker of original instrument funding alleged debt.

Entitlement Holder is drawer of original instrument funding alleged debt.

Entitlement Holder is attaching hereto a copy of the superior certified proof of all Entitlement rights held by Bettie D Oates.



## Part 5.  TWO PAGE ENTITLEMENT HOLDERS CONDITIONAL ACCEPTANCE, and HSBC CONSUMER LENDING USA INC.'S OFFER OF PERFORMANCE

### Bettie D Oates's Conditional Acceptance, and HSBC CONSUMER LENDING USA INC.'s Offer of Performance

This is an Offer tendered in good faith as full satisfaction of the claim referenced above with intent to extinguish the alleged debt, duty, obligation, or liability by Entitlement Holder herein, "Bettie D Oates," agent for and by Entitlement Holder herein, "BETTIE D OATES," named in the presentment referenced above, a copy of which is attached hereto and referenced herein, and Alleged Creditor, has the option of either accepting this Offer, rejecting this Offer or of making objection against the mode of this Offer.

This Offer for paying that certain sum of money for Entitlement Holder by Alleged Creditor asserts as an alleged debt, duty, obligation or liability, in full or in agreed installments, including interest and penalties, is made dependent upon performance of Conditions Precedent, by Alleged Creditor, unto which Entitlement Holder is entitled by the fundamental principals of American Jurisprudence and Law, namely, presentation by Alleged Creditor of any entitlement right or validation thereof in the alleged/purported claim or alleged debt and the documentary evidence establishing the factual basis for Alleged Creditor's claim for payment of the alleged/purported debt liability referenced within the presentment referenced above, to wit:
Validation of Alleged Creditor's right to collect this alleged/purported debt by providing any entitlement right or *validation* in the alleged/purported claim or alleged debt, including all organic or certified true agreements of assignment, negotiation or transfer of rights, or otherwise, indicating whether Alleged Creditor is the current owner, assignee, holder, or holder in due course of the above referenced alleged account, with evidence that Entitlement Holder consented unto said agreement in the event that the alleged agreement is a novation;
Validation of this alleged/purported claim or alleged debt by providing the requisite entitlement or *validation* and organic or certified true copies of:
1) all relative commercial instruments and/or contracts containing Entitlement Holder's bona fide signature (subjective theory); or,
2) the evidence of an exchange of a benefit or detriment (implied contract); or,
3) the series of external acts giving the objective semblance of agreement (objective theory); or otherwise; between Entitlement Holder and Alleged Creditor, that Alleged Creditor relies upon in making Alleged Creditor's presumptive claim; The name and address of the Original Creditor; A certified copy of a judgment;

Entitlement Holder shall receive a response regarding this Offer within ten days of receipt hereof, not counting day of service. Ten days is a commercially lenient and reasonable period of time, under the circumstances, because logic dictates that unless the alleged creditor is deliberately committing fraud, then the alleged creditor must have commercially reasonable basis for making a claim of alleged debt, and that evidence of this reasonable basis must be near at hand.

Entitlement Holder does not waive timeliness, however, when Alleged Creditor needs additional time such additional time must be requested in writing before the expiration thereof and the reasons why an extension of time is justifiable must be given in writing with good cause shown. Only the Entitlement Holder has the power of approving any request for an extension of time by the Alleged Creditor.

Entitlement Holder hereby gives Alleged Creditor **Notice** that: an obligation is extinguished by an OFFER OF PERFORMANCE, made in conformity with the rules prescribed, and with the intent of extinguishing the obligation; and an offer in writing of paying a particular sum of money or delivering a written instrument or specific personal property, is, when not accepted, the equivalent of actual production and tender of the money, instrument, or property.

In the event that Alleged Creditor fails by not making a response regarding this Offer within the prescribed time limit for response and there is no request for an extension of time with good cause shown, then Alleged Creditor is tacitly agreeing, that Alleged Creditor has no bona vide, lawful, verifiable entitlement rights or claims in alleged account # 605370-00-102727, that Alleged Creditor waives any claims and interests (liens) against Entitlement Holder, and Alleged Creditor tacitly agrees with compensating the Entitlement Holder for all costs, fees and expenses incurred in defending Entitlement Holder against this or any continued collection attempt(s) regarding the above referenced alleged account.

Alleged Creditor also tacitly agrees that Alleged Creditor has a duty of insuring that Entitlement Holder suffers no damage against this alleged account as a result of any actions or failure by non-action the Alleged Creditor. Alleged Creditor confesses judgment and the Entitlement Holder reserves the right of initiating a counterclaim or to claim the Oath or Bond or surety.

Entitlement Holder's assurance of **due process of law** is guaranteed by Alleged Creditor's agreement of claim from Bettie D Oates with the Federal Insurance Deposit Corporation or Fidelity Bond or Office of Risk Management or any violation of law.

Bettie D. Oates
Bettie D Oates

Sworn to and subscribed before me on April 3, 2008 a man known as Bettie D Oates came before me, a notary, and attested regarding the truth of this **Notice of Superior Entitlement Right** with his signature as being true, complete and correct.

**NOTARY PUBLIC** Elizabeth Bethea
**Address:** 3611 Mt Holly & Huntersville Rd
304-347
Charlotte N.C. 28216

SEAL

My commission expires Jan 31

(Seal: ELIZABETH BETHEA, NOTARY PUBLIC, MECKLENBURG COUNTY, N.C.)



Part 6.     **FIVE PAGE ALLEGED CREDITOR'S DISCLOSURE
            STATEMENT AND VALIDATION OF LAWFUL NOVATION**

Alleged Creditor and the Entitlement Holder or any court shall agree that when necessary, all parties must present and disclose this document with any statement(s), with certified, under the penalty of perjury, testimony to all answers by the Alleged Creditor. Alleged Creditor attaches this completed DISCLOSURE STATEMENT verification, i.e. *"Confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition* (Black's Law Dictionary, 6th ed.) in all records relating with each of the following:"

1.   Regarding this alleged account, does the Alleged Creditor have a bona fide affidavit of assignment for entering into the alleged/purported contract between the original alleged Creditor and Alleged debtor?   YES   NO

2.   Name of Alleged debtor(s): _____

3.   Address of Alleged debtor(s): _____

4.   Alleged account Number(s): _____

5.   Amount of alleged debt owed: $_____

6.   Date this alleged debt became payable:_____

7.   By which of the following methods was the transfer of rights over this alleged account accomplished? a) assignment     b) negotiation     c) novation     d) other – explain
_____

8.   What   are   the   terms   of   the   transfer   of   rights   to   this   alleged   account?
_____

9.   Regarding alleged account # 605370-00-102727 herein stated, Alleged Creditor is currently the: a) owner     b) assignee     c) holder     d) holder in due course e) other – explain: _____

10.  When the transfer of rights over this alleged account is by assignment, what is the consideration? $_____

11.   What is the nature and cause of this consideration? _____

12.   When the transfer of rights over this alleged account is by negotiation, is the alleged account taken for value? YES    NO

13.   What is the nature and cause of this value? $_____

14.   When the transfer of rights over this alleged account is by novation, is there evidence of consent by Bettie D Oates?    YES  NO

15.   What is the nature and cause of this consent? _____

16.   Does Alleged Creditor have knowledge of any claim(s) or defense(s) upon this alleged account? YES  NO

17.   What is the nature and cause of the claim(s) or defense(s) upon this alleged account?

18.   Were there any products or services sold by the Alleged Creditor unto the Alleged debtor? YES NO

19.   What is the nature and cause of these products or services?

20.   Does a verifiable, bona fide, original commercial instrument(s) between Alleged Creditor and alleged Debtor exist in which the alleged Debtor's bona fide signature appears thereon?  YES  NO

21.   What is the nature and cause of this verifiable commercial instrument? _____

22.   Does verifiable evidence exist of an exchange of a benefit or detriment between Alleged Creditor and Alleged debtor?   YES   NO

23.   What is the nature and cause of this evidence of an exchange of a benefit or detriment?
      _____

24.   Does verifiable evidence exist of an external act(s) giving the objective semblance of agreement between Alleged Creditor and Alleged debtor?   YES  NO

25. What is the nature and cause of this external act(s) giving the objective semblance of agreement? _____

26. Have any charge-offs been made by any alleged creditor or Alleged Creditor regarding this alleged account? YES NO

27. Have any insurance claims been made by any alleged creditor or Alleged Creditor regarding this alleged account? YES NO

28. Have any tax write-offs been made by any alleged creditor or Alleged Creditor regarding this alleged account? YES NO

29. Have any tax deductions been made by any alleged creditor or Alleged Creditor regarding this alleged account? YES NO

30. Did alleged creditor follow the General Accepted Accounting Principles "Matching Principle" stated under Title 12 USC § 1831n(a) as lawfully required? YES. NO (When answered "yes", then supply Entitlement Holder with a verified, bona fide, and certified true copy of statement of compliance as used/required by General Accepted Accounting Principles and Title 12 USC § 1831n(a)). _____

31. Is the alleged creditor the legal owner of the organic Promissory note that created the alleged debt? YES NO

32. Was the alleged creditor's original loan check or similar instrument the consideration that the alleged creditor loaned in order that the alleged creditor became the owner of the promissory note? YES NO

33. Was the alleged loan given in **money** or was the alleged loan an **order to pay**? _____

34 Is alleged creditor considered a trustee? YES NO

35. Is the Alleged Creditor a dealer/broker? YES NO

36. Does the Alleged Creditor have any Articles of Incorporation? YES NO

37. If yes to 36, please provide requestor with the location of and file number for a copy.

Entitlement and Validation NRDC 08          Page 16 of 19

38. Is this alleged security investment certified or registered? YES NO

39. When answer is "YES" in question 38, then please state specifically the file number, the specific location, name, address, city, state, zip code, and phone number for obtaining a certified copy of the alleged security investment.

40. Did alleged creditor make this loan on the security of the shares of creditor's own capital stock? YES NO

41. When answer is "YES" in question 40, then please send certified un-counterfeited documentation evidencing the same. When answer is "NO" in question 40, then please provide the specific alleged account information evidencing the exact location of the security interest alleged creditor used to make loan # 605370-00-102727. _____

42. When alleged creditor has no certified or registered security investment in alleged account # 605370-00-102727, upon what are alleged debt collection actions based? _____

43. When there is no evidence of a security investment by the alleged creditor in alleged account # 605370-00-102727 what are the affirmative defenses against charges of fraud against both alleged creditor's actions? _____

Alleged Creditor's refusal or failure by not completing and returning this statement unto Notary herein, and providing the requisite entitlement and *validation in* the herein referenced alleged/purported claim or alleged debt becomes Alleged Creditor's tacit agreement that Alleged Creditor has no verifiable, lawful, bona fide claim or interest (lien) in or against the herein referenced alleged account, and Alleged Creditor tacitly agrees with waiving any claim and interest (lien) in or against Bettie D Oates and indemnifying and holding Bettie D Oates harmless against any costs and fees incurred heretofore and hereafter related with any collection attempts involving the herein referenced alleged account.

Date:

_____          _____
Official Title of Signatory                              Signature for Alleged Creditor

Alleged Creditor must return this Disclosure Statement completed along with all documents referenced and requested in the attached foregoing documents. Alleged Creditor's claim or interest (lien) shall not be considered when any of this forty three question disclosure statement is not completed and returned with the said required documents, which specifically includes the requisite entitlement right or *validation*, made under Law. If Alleged Creditor does not respond

as required by Law, Alleged Creditor's claim and interest (lien) shall not be considered and Alleged Creditor shall remove any interests (liens) and be liable for damages for any continued collection efforts, or other injury, in Bettie D Oates or alleged account # 605370-00-102727. Please allow thirty days for processing after receipt of Alleged Creditor's response.

Sworn and subscribed before me, on *April 7 2003*, *Bettie D. Oates* is before me, a notary, and attesting regarding the truth of this affidavit with his/her signature as being true, accurate, complete and correct under the penalty of perjury being of sound mind and of lawful age.

**NOTARY PUBLIC** *Elizabeth Bethea*                    **SEAL**

**Address:**

*3611 Mt Holly & Huntersville Rd.*

*204, 347*

*Charlotte NC 28216*

My commission expires *Jan 31 2013*

*[Notary Seal: ELIZABETH BETHEA, NOTARY PUBLIC, MECKLENBURG COUNTY, N.C.]*



# PROOF OF SERVICE

Bettie D Oates does hereby swear and affirm that true, correct, and complete copies of this **Six Part Notice** are being served this date April 3, 2008 addressed as follows:

Served via: UNITED STATES POSTAL SER /REGISTERED MAIL #RE 194 288 042 US
to:
HSBC CONSUMER LENDING USA INC.
P.O. Box 88000
Baltimore, MD 21288-0001

By *Bettie D. Oates*

Sworn and subscribed before me, on April 3, 2008 , Bettie D Oates is before me, a notary, and attesting regarding the truth of this affidavit with his signature as being true, accurate, complete and correct.

NOTARY PUBLIC *Elizabeth Bethea*                    **SEAL**
**Address:**
3611 Military & Huntersville Rd
201-347
Charlotte NC 28216

My commission expires Jan 31 2013

*[Notary seal: ELIZABETH BETHEA / NOTARY PUBLIC / MECKLENBURG COUNTY, N.C.]*





**GERALD M. SHAPIRO**
Admitted in Illinois & Florida only
**DAVID S. KREISMAN**
Admitted in Illinois only
**GRADY I. INGLE**
Managing Partner

DAVID W. NEILL
DAVID KERN
JASON K. PURSER
JENNIFER RENSING
WENDY M. FLOYD
KIMBERLY A. SHEEK
JEFFREY A. BUNDA

**⚫Shapiro and Ingle** LLP

**8520 Cliff Cameron Drive, Suite 300
Charlotte, North Carolina 28269**

VOICE (704) 333-8107

FAX (704) 333-8156

http://shapiroattorneys.com/nc/

JENNIFER A. FISHER
KYLE STEWART
JONATHAN P. WILLIAMS
ALEX BOURCIER
SARAH H. MARKS

April 25, 2008

Darryl L. Culp
799 Pinkney Pl
Stanley, NC 28164

Re:    Mortgagor: Bettie D. Oates
Property Address: 5721 Silver Eagle Dr, Charlotte, NC 28214
Our file No.: 08-102976

**NOTICE REQUIRED BY THE FAIR DEBT COLLECTIONS PRACTICES
ACT, 15 U.S.C. SECTION 1692 et seq. AND STATEMENT OF
DEBT PURSUANT TO N.C.G.S 45-21.16(c)(5a)**

The law firm of Shapiro and Ingle, L.L.P. has been retained to initiate a foreclosure proceeding to foreclose
the mortgage on your property. The following information is provided to you as required by the Federal
Fair Debt Collections Practices Act:

     1.     As of March 20, 2008 the lender has advised that the amount of the debt is $105,198.15.
A detailed statement of this debt is shown by Exhibit A.

     2.     The creditor to whom the debt is owed is HSBC Consumer Lending USA Inc. as
servicing agent for MBNA America (Delaware), N.A..

     3.     The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion
thereof, within thirty (30) days of your receipt of this letter. The law also entitles you to request that we
provide you the name of the original creditor if the original creditor is different from the current creditor,
HSBC Consumer Lending USA Inc. as servicing agent for MBNA America (Delaware), N.A.. If you
choose to dispute the debt, or any portion thereof, or if you choose to request the name of the original
creditor, you must notify us within thirty (30) days of the date you receive this letter. If you do not dispute
the debt within this period, it will be assumed to be valid.

     4.     If you notify us within thirty (30) days of the date you receive this letter that you dispute
the debt or any portion thereof, or if you notify us within thirty (30) days of the date you received this letter
you want to know the name of the original creditor if that creditor is different from HSBC Consumer
Lending USA Inc. as servicing agent for MBNA America (Delaware), N.A., then we will obtain and mail
to you verification of the debt and/or the name and address of the original creditor.

     5.     The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days
from the date you receive this letter before initiating a foreclosure proceeding. In the event we do initiate a
foreclosure proceeding on your mortgage within thirty (30) days of the date you receive this letter, you
still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the
name of the original creditor if the original creditor is different from the current creditor, HSBC Consumer
Lending USA Inc. as servicing agent for MBNA America (Delaware), N.A..

6.      If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose on your property, even if we have already initiated a foreclosure proceeding, until we mail you information validating the debt and/or until we provide you with the name of the original creditor.

7.      Please be advised that if your personal liability for this debt has been discharged in a bankruptcy proceeding, this Notice is provided solely to foreclose the mortgage remaining on your property and is not an attempt to collect the discharged personal obligation.

Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call **(704) 971-6363**. You may also send an email to **ncfigs@logs.com**.

Any written requests should be addressed to:

Fair Debt Attorney
Shapiro & Ingle, LLP
8520 Cliff Cameron Drive, Suite 300
Charlotte, NC 28269

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT THIS OFFICE MAY BE DEEMED TO BE A DEBT COLLECTOR. ANY INFORMATION OBTAINED CAN BE USED FOR THAT PURPOSE.**

EXHIBIT A

Statement of Debt
Dated: April 25, 2008

HFC

| | |
|---|---|
| Principal Balance: | 97,467.33 |
| Accrued Interest: | 7,355.82 |
| Foreclosure Fees & Costs: | 375.00 |
| TOTAL PAYOFF: | $105,198.15 |

Per Diem Interest: $32.12



# CHARLOTTE
# GASTROENTEROLOGY &
# HEPATOLOGY, P.L.L.C.

Thomas A. Roberts, Jr., M.D.
John H. Moore, III, M.D.
Thomas J. Cavigan, M.D.
John S. Hanson, M.D.
Thomas A. Carr, M.D.
James L. Toussaint, M.D.
David G. Schiotz, M.D.
Sam R. Fulp, M.D.
Dennis D. Kokenes, M.D.
Thomas E. Werth, M.D.
Gardiner Roddey, M.D.
Steven A. Josephson, M.D.
Robert J. Schmitz, M.D.
Scott A. Brotze, M.D.
Simon Prendiville, M.D.
Sanjib P. Mohanty, M.D.
Kristy Potts, PA-C
Brooke Olenowski, PA-C
Ruth Perry, FNP-C
Michelle Sack, FNP-C
Marcie Pickett, ANP

Kathy J. Sammis, CEO, CFO

Kelli Phillips, COO

*Appointment Line All Offices*
(704) 377-0246

*Charlotte Office*
2015 Randolph Road
Suite 208
Charlotte, NC 28207-1200
(704) 377-4009
(704) 375-6970 Fax

*Matthews*
Matthews Medical Office Building
1450 Matthews Township Pkwy.
Suite 400
Matthews, NC 28105
(704) 849-8939
(704) 844-2679 Fax

*Ballantyne*
Ballantyne Medical Two Building
15830 John J. Delaney Drive
Suite 175
Charlotte, NC 28277
(704) 543-1220
(704) 543-3198 Fax

*Huntersville*
North Point Medical Mall
16525 Holly Crest Lane
Suite 120
Huntersville, NC 28078
(704) 892-8301
(704) 892-6638 Fax

*Mooresville*
Fairview Center
150 Fairview Road
Suite 120
Mooresville, NC 28117
(704) 235-2880
(704) 235-2899 Fax

*CGH - Belmont*
1220 Spruce Street
Belmont, NC 28012
(704) 377-0246

May 05, 2008

Ryerson Steel

Re:    DARRYL CULP
DOB: 09/24/1964

Dear Alicia Thomas,

I have been asked to provide supportive information about Darryl Culp and his disability. Over the last year his condition has not changed. He is still 100% disabled because of fecal incontinence, abdominal pain, weakness, fatigue and respiratory difficulties related to his ulcerative colitis and total abdominal colectomy with ileoanal anastomosis (J pouch). Please do not hesitate to contact me if you have any questions about this information.

Sincerely,

Sam R. Fulp MD

Sam Fulp MD

505590



Member HSBC ◇ Group

April 24, 2008

Bettie (Oates) Culp
5721 Silver Eagle Drive
Charlotte, NC 28214

RE:    Account #605370-00-102727

Dear Ms. Culp:

We are in receipt of your Dispute of Alleged Debt; Challenging of Entitlement Rights, dated
April 3, 2008. Please be advised that we established your debt with our previous correspondence
dated March 3, 2008. Our position remains the same; your signature on the loan agreement
attests to your acknowledgement of the terms and conditions described within. Your account is
due and payable.

Please be advised that Generally Accepted Accounting Principles (GAAP) is not a governing law
for your loan and has no bearing on your account.

We have confirmed that your debt is valid and that you are contractually obligated to repay your
loan. Your account will remain open until such time as it is paid in full. For HFC to consider you
no longer indebted by this loan, all the terms of your contract must be satisfied.

If you have further questions regarding the monetary system and worthless instruments, such as
the type you presented to us, you may contact the OCC at (202) 874-4800 or at
www.occ.treas.gov. If you need assistance in understanding the way in which the Federal
Reserve System works, there are educational materials available to you at
www.federalreserve.gov. You may also write to the Federal Reserve at 20th Street and
Constitution Avenue NW, Washington, DC 20551, or you may call them at (202) 452-3693, and
they may be able to supply you with the resources that you need.

If you have any questions regarding this response, you can reach our Customer Resolution
Department at (888) 245-9366.

Sincerely,

Rita Burgess
Rita Burgess
Customer Resolution Department

RVB:lmk

961 Weigel, Elmhurst, IL 60126

08-102976

IN THE GENERAL COURT OF JUSTICE
OF NORTH CAROLINA
SUPERIOR COURT DIVISION
MECKLENBURG COUNTY
**08 SP 3497**

IN THE MATTER OF THE FORECLOSURE OF A DEED
OF TRUST EXECUTED BY BETTIE D. CULP A/K/A
BETTIE D. OATES AND DARRYL L. CULP DATED
MAY 3, 2005 AND RECORDED IN BOOK 18728 AT
PAGE 750 IN THE MECKLENBURG COUNTY PUBLIC
REGISTRY, NORTH CAROLINA

**MECKLENBURG COUNTY**
**FILED #102**
**JUN 9 2008**
AT_____ O'CLOCK_____M
CLERK OF SUPERIOR COURT

### ORDER PERMITTING FORECLOSURE

THIS CAUSE was duly scheduled for hearing and a hearing was held before the undersigned (Assistant) Clerk of Superior Court on **June 9, 2008 at 10:00 AM** upon motion for hearing of the Substitute Trustee (having been so appointed by MBNA America (Delaware), N.A.).

And Whereas, various documents were provided including the subject Promissory Note, the Deed of Trust recorded in Book 18728 AT PAGE 750, appropriate assignments (if necessary), the Appointment of Substitute Trustee and an Affidavit of Default executed by MBNA America (Delaware), N.A.; and

On the basis of the record and the evidence presented at the hearing, the Court makes the following findings:

#### Findings

1.  **Service.** Each person entitled to notice was duly served with proper notice as provided by law.

2.  **Ownership of Note.** MBNA America (Delaware), N.A., is the owner and holder of said promissory note.

3.  **Validity of Debt.** The balance due on said promissory note constitutes a valid debt to MBNA America (Delaware), N.A.

4.  **Default.** Debtor is in default, under the note and deed of trust.

5.  **Right of Foreclosure under Power of Sale.** The deed of trust contains a power of sale. The noteholder has the right to have the deed of trust foreclosed under the power of sale contained therein.

NOW, THEREFORE, the trustee is hereby authorized to proceed with foreclosure of the deed of trust in the manner prescribed by law.

The date of this Order is June 9, 2008.

(Assistant) Clerk of Superior Court

FOR REGISTRATION JUDITH A. GIBSON
REGISTER OF DEEDS
MECKLENBURG COUNTY, NC
2005 MAY 12 09:05 AM
BK:18726 PG:798-765 FEE:$26.00
INSTRUMENT # 2005085926

2005085926

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126
804370

# DEED OF TRUST

This instrument was prepared by Household Finance Corporation on behalf of MBNA America (Delaware), N.A.

☐ IF CHECKED, THIS DEED OF TRUST SECURES FUTURE ADVANCES.

THIS DEED OF TRUST is made this 3RD day of MAY 20 05 , between the Grantor,
BETTIE D. CULP A/K/A BETTIE D. DATES & DARRYL L. CULP
WIFE AND HUSBAND
(herein "Borrower"),
Trustee CARRIE L. HARTSELL
of HICKORY , North Carolina. The beneficiary is
MBNA AMERICA (DELAWARE), N.A.
which is organized and existing under the laws of THE UNITED STATES whose address is
1100 N KING STREET, WILMINGTON DE 19884
(herein "Lender").

The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ 101,009.54 ,
evidenced by Borrower's Loan Agreement dated MAY 3, 2005 and any extensions or renewals
thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for
monthly installments of principal and interest, including any adjustments to the amount of payments or the
contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable
on MAY 3, 2035 :

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ , or
so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated
and extensions and renewals thereof (herein "Note"), providing for
monthly installments, and interest at the rate and under the terms specified in the Note, including any
adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the
principal sum above and an initial advance of $ . If this Security Instrument
secures future advances, Borrower may obtain advances for a period not to exceed 15 years from the date of
this Security Instrument.

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note,
with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this
purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust,
with power of sale, the following described property located in
MECKLENBURG County, North Carolina.

ALL THAT CERTAIN PROPERTY SITUATED IN THE CITY OF CHARLOTTE
IN THE COUNTY OF MECKLENBURG AND STATE OF NORTH CAROLINA,
BEING DESCRIBED AS FOLLOWS: N/A. BEING MORE FULLY
DESCRIBED IN A DEED DATED 06/30/1997 AND RECORDED
07/01/1997, AMONG THE LAND RECORDS OF THE COUNTY AND STATE
SET FORTH ABOVE, IN DEED VOLUME 9132 AND PAGE 521; TAX MAP
OR PARCEL ID NO.: 05717310

12-01-02 DOT

NCM08051

-2-

TO HAVE AND TO HOLD unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil, and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower covenants that the Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

In this Security Instrument secures future advances, termination of the Borrower's right to obtain additional advances will occur only as provided in the Note.

THIS SECURITY INSTRUMENT combines uniform covenants for national use of non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest, including any variations resulting from changes in the Contract Rate, on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law and only if requested in writing by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law or the Note provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

12-01-03 DOT F    *C51B75C3E0980DT900DN3M980530**CULP    ORIGINAL    NCM08

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property the leasehold and the title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable. attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

8. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest, Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

12. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

13. Legislation Affecting Lender's Rights. If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Borrower's address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

12-01-03 DOT F

15. Governing Law; Severability. The extension of credit secured by this Deed of Trust is governed by federal law, which for the purpose of 12 USC § 85 incorporates Delaware law. However, the interpretation and enforcement of this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorney's fees" include all sums to the extent not prohibited by applicable law or limited herein.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraphs 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees not to exceed 5% of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

20. Lender in Possession. Upon acceleration under paragraph 19 or abandonment of the Property Lender (in person by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

21. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee.

-5-

22. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

23. **Arbitration Rider to Note.** The Arbitration Rider attached to and mad a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

BY SIGNING UNDER Seal Below, Borrower accepts and agrees to the terms and covenants contained in the Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Bettie N. Cate_

_Bettie D. Culp_ (SEAL)
BETTIE D. CULP A/K/A BETTIE D. BATES  —Borrower

_Darryl L. Culp_ (SEAL)
DARRYL L. CULP  —Borrower DLC

STATE OF NORTH CAROLINA, Mecklenburg County ss:

I, Sally A Sager, a Notary Public of the County of Mecklenburg, A/K/A Bettie D. Bates State of North Carolina, do hereby certify that Bettie D. Culp & Darryl L Culp personally appeared before me this day and acknowledged the due execution of the foregoing instrument. Witness my hand and official seal this ___ day of May, 20 05.

My Commission expires: 9/1/09

_Sally A. Sager_
Notary Public

This foregoing Certificate(s) of _____

_____, is certified to be correct. This instrument and this certificate are duly registered at the time and in the Book and Page shown on the first page hereof.

Registrar of Deeds for _____ County

By _____
Deputy/Assistant Registrar of Deeds

_____ (Space Below This Line Reserved For Lender and Recorder) _____

12-01-03 D07

ORIGINAL



JUDITH A. GIBSON
REGISTER OF DEEDS, MECKLENBURG
COUNTY & COURTS OFFICE BUILDING
720 EAST FOURTH STREET
CHARLOTTE, NC 28202

# PLEASE RETAIN YELLOW TRAILER PAGE

It is part of the recorded document, and must be submitted with original for re-recording and/or cancellation.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Filed For Registration: | 05/12/2005 09:05 AM |
| Book: | RE 18728 Page: 750-755 |
| Document No.: | 2005085926 |
| | D/T 6 PGS $26.00 |
| Recorder: | LINDA CASTLEBERRY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

State of North Carolina, County of Mecklenburg

The foregoing certificate of SALLY A SAGER Notary is certified to be correct. This 12TH of May 2005

JUDITH A. GIBSON, REGISTER OF DEEDS By: _Linda H. Castleberry_
Deputy/Assistant Register of Deeds
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



*2005085926*